UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NICHOLAS FRANCHILLI,

                Plaintiff,

-against-

ALBERT EINSTEIN COLLEGE OF MEDICINE, MONTEFIORE HEALTH SYSTEMS, INC., AND MONTEFIORE MEDICAL CENTER.

                Defendants.

23-cv-04940

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

Plaintiff Nicholas Franchilli ("Plaintiff"), initiated this action on June 13, 2023, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A § 2000e *et seq.*, and its Amendments ("Title VII"), the New York State Executive Law 15 § 296 *et seq.* ("NYSHRL"), and New York City Human Rights Law – Administrative Code of the City of New York §§ 8-10 *et seq.*, against Defendants Albert Einstein College of Medicine ("the College"), Montefiore Health Systems, Inc., ("Montefiore Health"), and Montefiore Medical Center ("Montefiore Medical") (together, with Montefiore Health "Montefiore") (together, with the College and Montefiore Health, the "Defendants").

Presently before the Court is the Defendants' Motion to Dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' Motion to Dismiss is GRANTED.

## BACKGROUND

The following facts are derived from the Complaint and are taken as true and construed in the light most favorable to the Plaintiff at this stage.

1

Plaintiff is a 59-year-old Roman Catholic Male who started working for the College on May 14, 2018. (Compl. ¶ 23.) Due to the onset of the COVID-19 pandemic, Plaintiff worked remotely from March 23, 2020 to June 22, 2020. (*Id*. ¶ 28.) Plaintiff performed the same tasks working remotely as he did in the office. (*Id*. ¶ 30.) Plaintiff was not advised of any problems with his performance during this time. (*Id*. ¶ 29.) On or about June 22, 2020, the College re-opened its offices on a hybrid, rotating basis. (*Id*. ¶ 31.) Employees would conduct half of their work responsibilities at home and half in the office. (*Id*.) While working the hybrid schedule, Plaintiff was not informed of any performance issues. (*Id*. ¶ 32.) The College implemented safety measures for employees working in the office (temperature checks, wearing of masks.) (*Id*. ¶ 33.)

On July 14, 2021, the College sent notices via mail to its employees advising them of the College's COVID-19 vaccination policy. (*Id*. ¶ 34.) The College advised employees that if they "met the necessary requirements for an exemption," the College would "make every effort to accommodate them." (*Id*. ¶ 35.) Employees not vaccinated were able to complete PCR COVID-19 twice weekly and present the results to the College's Occupational Health Services to be cleared to be on campus. (*Id*. ¶ 36.) Additionally, unvaccinated employees would complete a daily electronic health assessment, wear a mask and socially distance while on campus. (*Id*.) Plaintiff was told to submit an exemption request by July 19, 2021. (*Id*. ¶ 37.) Plaintiff's religious beliefs as a practicing Roman Catholic led Plaintiff to believe that abortion and thus the use of aborted fetal tissue was a sin against God; therefore, Plaintiff believed he could not take any of the COVID-19 vaccines because their creation involved reliance on aborted fetal cell lines. (*Id*. ¶¶ 40-42, 48.) Plaintiff also states that he believes people should have the "free will to choose" because "we are made in the image of God" and thus should have had the choice to decide to take the COVID-19 vaccine, rather than because of a vaccine mandate. (*Id*. ¶ 49.)

On July 19, 2021, Plaintiff submitted his religious exemption request to Robert L. Cancellieri, Director of Employees Relations for the College. (*Id.* ¶ 50.) Then, on July 30, 2021, Plaintiff was told by Mr. Cancellieri that his exemption request was denied. (*Id.* ¶ 52.) The exemption denial later specifically stated accommodations the College had in place for employees whose exemption requests were denied: "Einstein has developed a plan to help address the impact of the vaccination requirement and allow for continued employment for those individuals whose request for exemption is denied. This plan includes, COVID-19 PCR testing, medical clearance, daily health assessment and continued enhanced COVID-19 preventive measures such as masking and distancing." (*Id.* Exhibit C at 5.)   Plaintiff and the College then "spoke . . . about accommodations that could be made." (*Id.* ¶ 53.) Plaintiff was provided with an alternative accommodation to vaccination: testing twice a week for COVID. (*Id.* ¶ 57.) Plaintiff asserts that "having to endure this testing requirement" would "not [be] a reasonable accommodation" and that "[a]llowing Plaintiff to remain at home to work would have alleviated the health and safety concerns" at issue. (*Id.* ¶ 61.)

Plaintiff was placed on unpaid leave August 2, 2021, and then terminated August 18, 2021, at which point he received two weeks' severance pay and payment for accrued vacation time. (*Id.* ¶ 63.)  The termination letter from Yvonne Ramirez, Vice President of Human Resources stated that Plaintiff was being terminated because he was "unable to comply with Einsten's vaccination requirements or alternative compliance terms" and the College would "not modify the requirements we have implemented to protect the students and employees of the College." (*Id.*, Exhibit D at 1.) Plaintiff alleges that because of his termination, he endured severe hardship, was forced to sell his New York home and relocate to Florida for employment. (*Id.* ¶¶ 71, 73.) Due to the loss of his job Plaintiff seeks recovery for damages under Title VII, NYSHRL, and NYCHRL

for alleged discrimination on account of a protected characteristic, and compensatory and punitive damages for monetary loss and emotional suffering. (*Id.* ¶¶ 117, 135, 149, 150, 169.)

## PROCEDURAL HISTORY

On June 13, 2023, Plaintiff commenced this action against Defendants in his complaint ("the Complaint".) (ECF No. 1.) On November 28, 2023, Defendants filed a motion to dismiss and their memorandum of law in support (the "Motion" or "Mot.", ECF Nos. 21 and 22.) Plaintiff filed an opposition to the Motion (the "Opposition" or "Opp.", ECF No. 24.) The Defendants also filed a reply in further support of the Motion (the "Reply", ECF No. 26.)

## LEGAL STANDARD

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry

is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff brings claims pursuant to Title VII, NYSHRL, and NYCHRL against the Defendants. Plaintiff's Title VII claim must be dismissed and the Court declines to exercise supplemental jurisdiction over Plaintiff's state and city-law claims.

### A. Montefiore is Not an Employer for the Purposes of Title VII

Title VII prohibits *employers* from engaging in discriminatory or retaliatory practices.  The "existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. New York State Educ. Dept.,* 460 F. 3d 361, 370 (2d Cir. 2006).  To "hold an employer liable for unlawful employment practices under Title VII, an employer-employee relationship must have existed between the parties at the time of the alleged unlawful conduct." *Felder v. United States Tennis Ass'n Inc.*, No. 17 CIV. 5045 (ER), 2018 WL 5621484, at *4 (S.D.N.Y. Oct. 30, 2018).

Plaintiff was an employee of the Albert Einstein College of Medicine. (Compl. ¶ 7.) Plaintiff asserts he was "an employee of the Defendants." (Compl ¶ 23.) Plaintiff states that the College is "a part of the Montefiore Medicine Academic Health System" and, in conclusory fashion, states it is "operating under the auspices of the Montefiore Health System" following a 2015 merger. (Compl. ¶ 8,10.) Montefiore purportedly "manages the operations and is responsible for" the College. (*Id.*)

This is insufficient to establish an employer-employee relationship under Title VII. Plaintiff does not assert that Montefiore controlled the scope of his employment, the terms of his

5

employment, or the conditions of his employment. Plaintiff even concedes the College, *not* Montefiore, was responsible for his compensation. Indeed, Plaintiff expressed his "wiling[ness] to transfer over to the Montefiore payroll." (Compl. Exhibit C at 2.)  By admitting that he was on the College's separate payroll, Plaintiff precludes any possible employer-employee relationship with Montefiore; "[w]here no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist." *O'Connor v. Davis*, 126 F.3d 112. 115-116 (2d Cir. 1997); *see also Tadros v. Coleman*, 898 F.2d 10 (2d Cir. 1990) (affirming dismissal of Title VII claim for lack of employer-employee relationship where the defendant neither paid nor controlled the plaintiff's work).

The joint-employer doctrine similarly does not save Plaintiff's claims against Montefiore from dismissal. The joint employer doctrine applies "when separate legal entities have chosen to handle certain aspects of their employer-employee relationships jointly." *Lima v. Addeco,* 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009) (quotations and citations omitted). Factors used to determine if two entities are joint employers are "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 93 (2d. Cir. 1994) (citing *Clinton's Ditch Cooperative Co. v. NLRB*, 778 F.2d 132 (2d Cir. 1985)).

The Complaint is devoid of factual allegations suggesting the Defendants had such commonality. Plaintiff only speculates, but does not plausibly allege, that because the College and Montefiore "finalized a deal . . . whereby the college is now operating under the auspices of the Montefiore Health System. Upon information and belief, Montefiore manages the operations and is responsible for [the College]." (Compl. ¶ 10.) These are insufficient, conclusory statements. Plaintiff "cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory*." Citizens United v. Schneiderman*, 882 F.3d 374, 385 (2d Cir.

2018). Rather, the few factual assertions offered by the Complaint only points to being separate employers (for instance, their separate payrolls). (Compl. Exhibit C at 2.)

Plaintiff's Opposition's reliance on *Dortz v. City of New York*, 904 F. Supp. 127 (S.D.N.Y. May 16, 1995) is unavailing. Plaintiff states that for Title VII claims, in the absence of a direct employment relationship, liability may still exist "[w]hen several entities 'have an integrated economic relationship and exercise common control over employment practices' that affect an employee, each may be held liable for the other's discriminatory acts and policies as an integrated enterprise." Opposition at 23. That may be so, but it remains that Plaintiff did not offer the Court more than speculative, conclusory assertions that Montefiore exerted the kind of control needed to find an employer-employee relationship, whether under a direct relationship or under the joint employer doctrine/single enterprise analysis. Accordingly, Plaintiff's claims against Montefiore must be dismissed. Because the Court, in its discretion, is not exercising supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims, the Court will not address whether Montefiore is an employer under state and city-law.

## B. Violation of Title VII – Termination on the Basis of Religion

To defeat a motion to dismiss in a Title VII discrimination case, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); *see also Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) ("absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff [(1)] is a member of a protected class, [(2)] was qualified, [(3)] suffered an adverse employment action, and [(4)] has at least minimal support for

7

the proposition that the employer was motivated by discriminatory intent") (citation omitted) (alterations in original).

Title VII requires that employers "reasonably accommodate . . . an employee's religious observance or practice" unless doing so would cause an 'undue hardship on the conduct of the employer's business." 42 U.S.C §2000e(j). An important qualifier is that "employees are not entitled to hold out for the 'most beneficial accommodation.'" *Baker v. The Home Depot*, 445 F. 3d 541, 548 (2d Cir. 2006) (quoting *Ansonia Bd. Of Educ. V. Philbrook*, 479 U.S. 60, 69) (1986)). Title VII does not guarantee reasonable accommodation to employees who deny opportunities that could ensure their religious beliefs were accommodated. *Doughty v. Dep't of Developmental Servs. STS*, 607 F. App'x 97, at *98-99 (2d Cir. 2015) (affirming dismissal of Title VII religious discrimination where complainant refused to select schedule that accommodated his religious belief despite being able to do so and employer could not reasonably accommodate otherwise).

Plaintiff can survive the first three prongs of the motion to dismiss analysis against a claim of discrimination under Title VII. *Buon*, 65 F.4th 64, 79. Plaintiff is a member of a protected class (a religious group), he was qualified for the job (*see* Compl. ¶¶ 20-21), and he did suffer an adverse employment action in being terminated. However, where Plaintiff fails is the final prong – that the adverse action was motivated by discriminatory intent against a protected characteristic. Plaintiff's very own allegations betray the extent to which the College sought to accommodate Plaintiff. When Plaintiff's request for a religious exemption was denied, that same letter articulated an appeals process "[y]ou may appeal this decision, within 5 business days of this letter, by submitting additional documentation in support of your request." (Compl. Exhibit C at 5.) Plaintiff did not avail himself of the appeals process, all while complaining that "[a]fter the Plaintiff received the July 30th notice, there was no additional meaningful cooperative dialogue."

(Compl. ¶132.) The denial letter further stated the College purposefully "developed a plan to help" accommodate unvaccinated employees to allow for "continued employment for individuals whose request for an exemption [was] denied." (Compl. Exhibit C at 5.) Plaintiff even admits explicitly that after his exemption request was denied, the College offered an alternative accommodation. The Complaint states "Plaintiff acknowledges that he was provided with [an] alternative of testing for COVID-19 twice a week." (Compl. ¶ 57.) The alternative was an accommodation whereby Plaintiff could test regularly for COVID-19, conduct health screening and maintain safety protocol (social distancing, wearing a mask) and continue his employment unvaccinated. (Compl. Exhibit C at 5.) When Plaintiff rejected this accommodation, only then was adverse action taken. (Compl. Exhibit D at 2, stating "[because] you are unable to comply with Einstein's vaccination requirements or alternative compliance terms . . . we must inform you that your employment with [the College] is terminated").

As alleged in the complaint, the College satisfied its legal obligation to reasonably accommodate religious beliefs under Title VII. Plaintiff's decision to reject the College's accommodation does not retroactively render the College's efforts discriminatory; it simply means that Plaintiff was given the opportunity to be reasonably accommodated and choose not to be. This does not reignite any statutory considerations. It is immaterial that Plaintiff did not want the accommodation offered. Employees "cannot hold out" for their preferred accommodation. *Baker*, 445 F. 3d 545, 548. Plaintiff may have preferred entirely remote work, but this preference does not impose on the College an obligation to adhere to Plaintiff's specific request. The Supreme Court in *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) held that regarding Title VII "[w]e find no basis in either the statute or its legislative history for requiring an employer to choose any particular reasonable accommodation. By its very terms the statute directs that any reasonable

9

accommodation by the employer is sufficient to meet its accommodation obligations." *Id*. Once the College offered a reasonable accommodation to Plaintiff, "the statutory inquiry [was] at an end." *Id*.

Plaintiff's attempts to justify a fully remote work arrangement based on the period of remote work during the COVID-19 pandemic (*see* Compl. ¶ 147) are unpersuasive because "[t]he employer need not further show that each of the employee's alternative accommodations would result in undue hardship." *Ansonia*, 479 U.S. 60, 68. *See also Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (noting that "to avoid Title VII liability, the employer need not offer the accommodation the employee prefers. Instead, when any reasonable accommodation is offered, the statutory inquiry ends"); *Durant v. Nynex*, 101 F. Supp. 2d 227, 234 (S.D.N.Y. 2000) (noting that the Court did not need to determine whether the employee's "alternative accommodation[s] [are] reasonable, since Title VII only requires that the employer propose a reasonable accommodation and does not require that the employer offer the specific accommodation the employee seeks").

Thus, because the College reasonably accommodated Plaintiff's religious beleifs, and because there can be no inference of discrimination against a protected characteristic because adverse action was taken only after Plaintiff decided to not appeal the denial of his religious exemption request and only after Plaintiff rejected the College's alternative, reasonable accommodation, Plaintiff's First Cause of Action and Second Cause of Action for religious discrimination under Title VII are dismissed with prejudice.

C. **New York State Human Rights Law and New York City Human Rights Law Claims**

Because Plaintiff's Title VII claim – the only claim over which the Court has original jurisdiction – must be dismissed, the Court, in its discretion, declines to exercise supplemental

jurisdiction over Plaintiff's state and city law claims. *See* 28. U.S.C. § 1367(c) (a district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction"); *see also Shahid-Ikhlas v. New York And Presbyterian Hosp., Inc.,* No. 122CV10643GHWSDA, 2023 WL 3628151, *7 (S.D.N.Y. May 5, 2023) (declining to exercise supplemental jurisdiction over NYSHRL and NYCHRL claims where Plaintiff's Title VII claim was dismissed); *Parks v. Montefiore Med. Ctr.*, No. 23-CV-4945 (JPO), 2024 WL 917330 (S.D.N.Y. Mar. 4, 2024) (same); *Kauffman v. New York Presbyterian Hosp.*, No. 23-CV-4964 (AT) (RWL), 2024 WL 2279318 (S.D.N.Y. May 16, 2024) (same). Thus, Plaintiff's Third Cause of Action and Fourth Cause of Action claims are dismissed without prejudice to recommence in state court.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's first cause of action asserted pursuant to Title VII is Granted with prejudice, and Plaintiff's state law claims are dismissed without prejudice to recommence in state court.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 21 and to terminate the action.

Dated: August 20, 2024  
       White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge